UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EDISON ALEXANDER PEOPLES,

                 Petitioner,             Case No. 1:19-cv-156

v.                                   Honorable Robert J. Jonker

JOHN DAVIDS,

                 Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner Edison Alexander Peoples is incarcerated with the Michigan Department of Corrections

at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  Following a bench trial

in the Alger County Circuit Court, Petitioner was convicted of assault with a dangerous weapon,

Mich. Comp. Laws § 750.82, and being a prisoner in possession of a weapon, Mich. Comp. Laws

§ 800.283(4).  On February 1, 2016, the court sentenced Petitioner to respective prison terms of 2

to 4 years and 2 years, 4 months to 5 years.  Both sentences are to be served consecutively to the

sentences for which Petitioner was incarcerated at the time of the offense.

On February 25, 2019, Petitioner filed his habeas corpus petition raising five

grounds for relief, as follows:

    I.      THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED
THE PETITIONER THE CONSTITUTIONALLY GUARANTEED
RIGHT TO REPRESENT HIMSELF.

    II.     TRIAL COUNSEL'S PERFORMANCE FELL BELOW AN OBJECTIVE
STANDARD OF REASONABLENESS AND PETITIONER WAS
THEREFORE DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL
WHEN TRIAL COUNSEL FAILED TO OBJECT ON

> CONSTITUTIONAL GROUNDS TO THE NONAPPEARANCE OF THE ALLEGED VICTIM AT TRIAL, FAILED TO COMMUNICATE WITH THE PETITIONER PRIOR TO TRIAL, AND FAILED TO FILE A SUPPLEMENTAL BRIEF AFTER THE TRIAL COURT RENDERED ITS VERDICT.

III.    THE EVIDENCE PRODUCED AT TRIAL WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT PETITIONER COMMITTED A FELONIOUS ASSAULT BECAUSE THERE WAS NO EVIDENCE TO SHOW THAT ANY ASSAULT TOOK PLACE WITHOUT THE ALLEGED VICTIM'S CONSENT.

IV.    THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SHOW BEYOND A REASONABLE DOUBT THAT PETITIONER WAS LAWFULLY INCARCERATED FOR PURPOSES OF THE PRISONER IN POSSESSION OF A WEAPON CHARGE.

V.    THE TRIAL COURT FAILED TO MAKE SUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW IN RENDERING ITS VERDICT FOLLOWING THE BENCH TRIAL.

(Pet., ECF No. 1, PageID.5–10; Br. in Supp. of Pet., ECF No. 1-1, PageID.29, 41, 44, 50, 52, 55.)

Respondent has filed an answer to the petition (ECF No. 6) stating that the grounds should be denied because they are either non-cognizable or without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are either meritless or not cognizable in this habeas proceeding.  Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

The basic facts underlying Petitioner's conviction were recited by the Michigan Court of Appeals, as follows:

> Defendant was incarcerated at the Alger Correctional Facility at the time he assaulted another prison inmate with an improvised knife on a morning in August 2016.  Correctional Officer Marc Maxon testified that, at the time in question, he was in a locked-control room from which he could look into the prison wings, when he observed the victim, who was on cell cleanup duty and was talking to another inmate.  Maxon stated that he also observed defendant exit the shower, throw his

2

shower supplies on a bed, and then move quickly toward the victim with something in his hand.  Defendant then forcefully and repeatedly stabbed the victim, whose back was initially turned to defendant, with the weapon.  Maxon observed no interactions between defendant and the victim before the stabbing.  Maxon called for assistance, and prison staff secured defendant and the victim.  Maxon observed defendant toss his weapon away as other correctional officers responded to the melee.  Other correctional officers also testified that they saw defendant stabbing the victim with the knife.  The victim sustained several stab wounds and was taken for medical treatment.  A correction officer retrieved the weapon and secured it.

*People v. Peoples*, No. 331639, 2017 WL 2130278, at *1 (Mich. Ct. App. May 16, 2017).  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016).  Petitioner's habeas challenges do not call into question the facts recited by the state appellate court.  Indeed, Petitioner's description of the facts in his habeas brief is entirely consistent with the facts described by the court of appeals.[1]

In his appeal to the Michigan Court of Appeals, Petitioner argued the same five issues he raises in his habeas petition.  In a lengthy unpublished opinion issued on May 16, 2017, the court of appeals rejected all appellate grounds and affirmed the convictions.  Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same issues.  The supreme court denied leave to appeal on November 29, 2017.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on

---

[1] The consistent descriptions of the facts offered by Petitioner and the court of appeals suffice to resolve the issues raised by Petitioner.  That is fortunate, as the Respondent neglected to include the trial transcript in the Rule 5 materials.

the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established federal law as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v.*

*Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

  The AEDPA limits the source of law to cases decided by the United States Supreme

Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the

Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652,

655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381–82; *Miller v. Straub*, 299

F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include

decisions of the Supreme Court announced after the last adjudication of the merits in state court.

*Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of

the legal landscape as it would have appeared to the Michigan state courts in light of Supreme

Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742

F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

  A federal habeas court may issue the writ under the "contrary to" clause if the state

court applies a rule different from the governing law set forth in the Supreme Court's cases, or if

it decides a case differently than the Supreme Court has done on a set of materially

indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy

this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Right to Self-Representation (habeas ground I)

In his first ground for habeas relief, Petitioner contends he was denied the right to represent himself, in violation of the Sixth Amendment.  Petitioner asserts that he expressly asked to represent himself at a pretrial hearing held March 3, 2014, but the trial court denied his request.

The Sixth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that a criminal defendant shall have the right to the assistance of counsel in his defense.  *See* U.S. Const. amend. VI; *see also Faretta v. California*, 422 U.S. 806, 807 (1975)*; Martinez v. Ct. of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 154 (2000).  This right necessarily implies its corollary, that a defendant has a right to proceed without counsel and represent himself.  *Faretta*, 422 U.S. at 832–34; *see also United States v. Mosely*, 810 F.2d 93, 97 (6th Cir. 1987) ("'The right to defend *pro se* and the right to counsel have

been aptly described as "two faces of the same coin," in that waiver of one right constitutes a correlative assertion of the other.'") (quoting *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970)).  "[F]orcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so."  *Faretta*, 422 U.S. at 817.

Given the importance of the right to counsel, however, a defendant's request for self-representation must be unequivocal and his waiver of his right to counsel and the decision to proceed *pro se* must be knowing, voluntary and intelligent.  *See Faretta*, 422 U.S. at 835.  For any such waiver to be effective, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  Whether a defendant's choice was made with "eyes open" generally "depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938).

The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel[,]" *Iowa v. Tovar*, 541 U.S. 77, 88 (2004), and there is "no sacrosanct litany for warning defendants against waiving the right to counsel[.]"[2]  *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005).  However, less rigorous warnings are required before trial than at trial "because, at that stage, 'the full dangers and

_____

[2] The Court notes that the Sixth Circuit requires federal district courts within the circuit to conduct an inquiry as set forth in *1 Bench Book for United States District Judges* 1:02-2 (3d ed. 1986) before accepting a waiver of a right to an attorney.  *King v. Bobby,* 433 F.3d 483, 492 (6th Cir. 2006); *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir. 1987).  However, this type of formal, detailed inquiry is not required by clear Supreme Court precedent. *King,* 433 F.3d at 492.  Accordingly, in the context of federal habeas review, there is no script that a state court must follow in determining whether a criminal defendant has made a "knowing, voluntary, and intelligent" waiver of counsel.  *Id.*  Rather, the state court must reasonably apply Supreme Court precedent, which requires looking at the "whole record" to determine if the defendant made a knowing and intelligent waiver.  *Id.*

disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial.'" *Tovar*, 541 U.S. at 90 (quoting *Patterson v. Illinois*, 487 U.S. 285, 299 (1988)).

Further, "[s]ince the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984); *see also Washington v. Renico*, 455 F.3d 722, 734 (6th Cir. 2006) (holding that "denial of the *Faretta* right is a structural error for which [defendant] need not show any prejudice") (citing *McKaskle*).

The Michigan Court of Appeals comprehensively addressed the issue as follows:

"The right to self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013). "The right of self-representation is also implicitly guaranteed by the Sixth Amendment of the United States Constitution." *Dunigan*, 299 Mich App at 587. "[A]lthough the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as a guarantor of a fair trial, is the standard, not the exception, in the absence of a proper waiver." *People v Russell*, 471 Mich 182, 189–190; 684 NW2d 745 (2004) (internal quotation marks and citation omitted). Upon a defendant's request to proceed pro se, the trial court must determine whether the request is unequivocal, whether the defendant is knowingly, intelligently, and voluntarily waiving the right to legal counsel, and whether the defendant's self-representation will disrupt, unduly inconvenience, and otherwise burden the court and the administration of justice. *People v Anderson*, 398 Mich 361, 367–368; 247 NW2d 857 (1976).

In this case, before trial, defendant repeatedly asserted what he called a jurisdictional challenge to the prisoner-in-possession charge, asserting that he was not represented by counsel during the verdict phase of the trial that resulted in his incarceration,[] and arguing that this irregularity not only invalidated the result of his trial, but also invalidated the Department of Correction's exercise of jurisdiction over him.[]

During a pretrial hearing, as defense counsel was advancing defendant's challenge to the incarceration underlying his prisoner-in-possession charge, defendant asked the court if it would mind if he spoke, and the court answered that it would indeed mind. Defense counsel then continued with his argument before defendant interjected again:

*Defendant*.   Your Honor, for the purposes of this hearing, I'd like to represent myself.

*The court*.  Sit down . . . .

*Defendant*.  Are you denying my motion?

*The court*.  I am.  Let's continue here . . . .

. . . [I]f you have. . . of any nature, you need to reduce them to writing and provide them to your attorney prior to the hearing, okay?  He's competent; I've watched him work, he knows what he's doing.  If you have matters that you want to bring to his attention, reduce them to writing and get 'em to him.  He will meet . . . with you, when it's convenient for both of you, so that you can prepare your case.  But I don't want to continue with the interference.  If you have questions, get 'em to him, all right?  If you need more time when you're here, to meet with him, we'll provide it okay?  Let's move on.

As defense counsel was winding down his argument, defendant interjected that he would "like to redo my motion" and to "represent myself" in the matter.  The following discussion then took place:

*The court*.  If you want to make that motion, reduce it to writing; we'll take it up at the next hearing, okay?  But we're here on this point.  This is the second bite of the apple.  Your attorney understands what he's doing.  I understand what the motions are; I understand what the arguments are.  [The prosecuting attorney] understands what they are.  All right?  Quit interrupting, all right?

*Defendant*.  I'm speaking to my attorney telling him, 'cause he doesn't— it is—it's rather elaborate, the issues, and . . . it's so convoluted and meshed in which some of the issues affects the other, that he has difficulty—I've studied this for years, and I have understanding. I'm reading this enough—

*The court*.  Very good.

*Defendant*.  —keeping track of it for years—

*The court*.  I've understood—

*Defendant*.  —so—

*The court*.  —his arguments.  I'm not confused.

*Defendant*.  Okay.

> *The court.*  I don't think [the prosecuting attorney is] confused. We understand the issues.  All right?

The court denied defendant's motion, noting, among other things, that it could not "perceive" a situation where a court would move forward during the taking of the verdict without defense counsel being present.

Defendant's request to represent himself was thus not unequivocal, but was limited to the motion hearing before the court.  The record clearly shows that the request related to only the motion then before the court, as underscored by defendant's explanation that the issues presented in the motion were "elaborate, convoluted, and meshed," and that he had studied the matter for years and had a good understanding of the issues.  Defendant also explained that he wanted to address the court personally because he had been telling his attorney what to say to the court, inducing the court to assure defendant that it understood defense counsel's position, and required no elaboration or clarification.

Instructive here is *People v Arthur*, 481 Mich 882; 748 NW2d 879 (2008) (peremptorily reversing in part and remanding, while otherwise denying leave), where the Supreme Court reversed this Court's disposition of the issue of self-representation and adopted the reasoning in the dissenting opinion.  In *Arthur*, during a pretrial hearing, the defendant informed the court that, "Throughout the rest of these proceedings, I just would like to address the Court, let the Court know that I will be representing myself.  [Defendant's appointed attorney] will no longer be representing me throughout the rest of these proceedings."  *People v Arthur*, unpublished opinion per curiam of the Court of Appeals, issued January 29, 2008 (Docket No. 273577), p 2.  The trial court denied defendant's request, reminded him that he was represented by counsel, and advised him that he could file a motion in the matter.  *Id.* at 2.  Throughout the hearing, the defendant continued to insist that he wanted to represent himself and even protested to the court that "[y]ou cannot deny my constitutional rights, Your Honor."  Unpub op at 2–3.  This Court's majority held that the defendant's request was not unequivocal because he made the request during two hearings on a motion to adjourn, failed to file a motion for self-representation before the trial court, and requested his counsel to withdraw while repeatedly asking for a different counsel.  Unpub op at 1.  The dissent disagreed, opining that the defendant's request was unequivocal in light of his "twice-repeated request to represent himself, coupled with a specific reference to the constitutional nature of his right."  Dissent at 2 (GLEICHER, J.).  The dissent elaborated that defendant's "election to self-representation was unqualified and forthright" as "his words evinced neither equivocation nor hesitation."  *Id.* at 1.

This case is distinguishable from *Arthur*, in that defendant's request was limited to the motion then before the court, and apparently based on his assumption that defense counsel did not fully understand his theory for challenging the prisoner-in-possession charge.  *See, e.g., People v Payne*, 27 Mich App 133, 134–136; 183 NW2d 371 (1979) (no denial of the right of self-representation where the defendant's request to discharge his appointed counsel included no unequivocal

request to represent himself).  Moreover, defendant did not indicate that he was dissatisfied with his counsel's performance, see *Anderson*, 398 Mich at 370–371, or that he wished to waive his right to counsel, but instead was merely attempting to add his personal insights to defense counsel's presentation.  Because defendant's request was not unequivocal, the trial court was not required to inquire further into the matter.  See *id.* at 368 ("once the defendant has unequivocally declared his desire to proceed pro se the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily").

Defendant objects to the trial court's having directed him to file a motion in connection with his request to represent himself and correctly points out that motions for self-representation may be made orally.  See MCR 2.119(A)(1).  The trial court properly denied defendant's oral motion and did not abuse its discretion by offering defendant the opportunity to file a second, written motion.  Because defendant did not express an unequivocal desire to represent himself, the trial court did not err in declining to allow defendant any degree of self-representation in the proceedings below.  See *Anderson*, 398 Mich at 367–368.

*Peoples*, 2017 WL 2130278, at *1–4 (footnotes omitted).  In analyzing the issue, the court of appeals squarely applied the *Faretta* standard.  Indeed, although the court cited only Michigan cases, those cases expressly relied on *Faretta*.  *See People v Arthur*, 748 N.W.2d 879 (Mich. 2008) (summarily reversing on the analysis of the dissenting opinion in the Michigan Court of Appeals) (applying *Faretta*); *People v. Russell*, 684 N.W.2d 745, 749–50 (2004) (applying *Faretta*); *People v Anderson*, 247 N.W.2d 857, 859–60 (Mich. 1976) (analyzing *Faretta* and holding that the standard under the Michigan constitution was identical to that articulated in *Faretta*).  The court of appeals, therefore, applied the correct federal constitutional standard.  Moreover, the state court correctly recited the entirety of the applicable record.  (Mar. 3, 2014, Pretrial Hr'g Tr., ECF No. 7-6, PageID.306–307, 308–309.)

At issue, therefore, is whether the court of appeals reasonably applied *Faretta* and its progeny to the facts in issue here.  Given the general standard articulated in *Faretta*, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires

considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."); *Woods*, 575 U.S. at 318 ("[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." (internal quotation marks and alteration omitted)).

As the court of appeals recognized, Petitioner's request to represent himself was expressly qualified:  he indicated that he wished to represent himself only at the hearing and only after his attorney had substantially completed his argument on the issues.  At no time did Petitioner indicate that he wished to represent himself in all matters or that he wished to proceed in the case without an attorney.  He simply wanted to interrupt an ongoing proceeding to add his own arguments, because he believed that he had greater insight into the arguments than the other parties who were present.

Nothing in *Faretta* or subsequent cases indicates that a defendant has a constitutional right to represent himself in only some portions of his defense.  *See McKaskle*, 465 U.S. at 183 (holding that "*Faretta* does not require a trial judge to permit 'hybrid' representation . . . . A defendant does not have a constitutional right to choreograph special appearances by counsel.")  Where, as here, the petitioner effectively seeks to "act as co-counsel," rather than to fully represent himself and waive counsel, his Sixth Amendment rights are not implicated. *Hudson v. Larson*, No. 13-12254, 2015 WL 1912577, at *5 (E.D. Mich. Apr. 27, 2015) (citing *McKaskle*, 465 U.S. at 183, and *United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004).

Given the limited way in which Petitioner requested to represent himself, the court of appeals reasonably determined that Petitioner had not unequivocally expressed a desire to represent himself and waive counsel in the proceedings against him.  Moreover, the court explicitly

advised Petitioner that, if he wished to represent himself, he should file a motion, which the court then would consider.  Petitioner never filed such a motion and never demonstrated an intent to represent himself.  Under these circumstances, Petitioner fails to show that the court of appeals unreasonably applied established Supreme Court precedent in denying his motion.

## IV.    Ineffective Assistance of Counsel (habeas ground II)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.    A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland*, 466 U.S. 668 under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles*, 556 U.S. at 123); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122

(2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner presents three distinct ineffective assistance of counsel claims.  First, he contends counsel rendered ineffective assistance for failing to object on constitutional grounds to the nonappearance of the alleged victim at trial.  Second, Petitioner claims counsel failed to communicate with Petitioner prior to trial.  Finally, Petitioner claims that counsel failed to file a supplemental brief after the trial court rendered its verdict.  Each claim is discussed below.

A.    **Confrontation Clause**

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

The Confrontation Clause is not implicated with respect to the alleged victim's testimony, because he never "testified" at trial, either directly or through the introduction of testimonial out-of-court statements, *Crawford v. Washington*, 541 U.S. 36, 68–69 (2004).  The clause applies only to witnesses—those who provide testimony.  A criminal defendant has no right to confront a person who provides no evidence at trial.  *See Cooper v. California*, 386 U.S. 58, 62 n.2 (1967) ("Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront the witnesses against him, because the State did not produce the informant

13

to testify against him.  This contention we consider absolutely devoid of merit."); *see also McCray v. Illinois*, 386 U.S. 300, 313–314 (1967) (same); *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992) ("The Sixth Amendment guarantees to a defendant the right to confront witnesses against him . . . [it] does not, however, require the government to call every witness competent to testify . . . ."); *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985) ("The confrontation clause does not come into play where a potential witness neither testifies nor provides evidence at trial."); *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985) ("[T]he Confrontation Clause is not a guarantee that the prosecution will call all the witnesses it has against the defendant.").

The Michigan Court of Appeals recognized that the Confrontation Clause was simply not implicated under these circumstances.  For that reason, the court of appeals determined that Petitioner's counsel could not be considered ineffective for failing to raise a Confrontation Clause challenge.  (Mich. Ct. App. Op., ECF No. 7-13, PageID.367) ("[A]ny Confrontation Clause objection requiring the prosecution to produce the victim as a witness would have been futile, and counsel is not ineffective for declining to raise a futile objection.").  The appellate court's determination is entirely consistent with *Strickland* because "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

### B.    Failure to consult with Petitioner before trial

Petitioner's claim that counsel failed to consult with Petitioner reads as follows:

[T]rial counsel did not meet with Petitioner for several months before he went to trial.  There was no discussion as to potential witness[es], defense, or any motion that should/may have [been] needed to be filed, such as a writ of habeas to have [the] Michigan Department of Correction bring forth [the victim] as a witness, nor was Petitioner informed of the date he was going to trial.  (T 6).  The time Petitioner went before the court with his counsel, the only discussion between counsel and himself dealt strictly with the mo[tions] that [were] before the court, nothing at all about witnesses or defenses.

14

Trial counsel himself acknowledged that he had had two meetings scheduled with Petitioner that he had missed, and had been unable to talk to him without providing a reason or justification for this failure to communicate.

(Pet'r's Br., ECF No. 1-1, PageID.47); see also (Pet'r Br. on Appeal, ECF No. 7-13, PageID.429.)  The court of appeals concluded that Petitioner's claim fell short on both prongs of the *Strickland* analysis:

Next, defendant contends that counsel was ineffective for failing to show for two scheduled meetings with him.  Although defense counsel requested an adjournment on the grounds that he failed to attend two scheduled meetings with defendant the week before trial, the record shows that counsel was prepared to proceed with trial.  Indeed, defense counsel displayed an astute knowledge of the evidence, and fully cross-examined the prosecution's witnesses.  See *People v Payne*, 285 Mich App 181, 189; 774 NW2d 714 (2009).  Moreover, defendant does not suggest how the outcome of trial might have been different had the two meetings taken place as scheduled.

Further, defendant's assertion during sentencing that there had been no trial preparation because he did not have contact with defense counsel for eight or ten months before trial is not supported by the record.  Before the December 14, 2015 bench trial, defendant, and his attorney appeared for trial on May 26, 2015, which was postponed to enable defendant to pursue an interlocutory appeal with this Court on whether lawful incarceration is an element of prisoner-in-possession.  Thereafter, all proceedings were stalled until the parties, including defendant's appellate advocate, informed the trial court on August 19, 2015 that they agreed that proof of lawful incarceration was an element of the prisoner-in-possession charge.  Defendant has thus failed to establish a factual basis for his claim.  See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).  For these reasons, defendant has failed to show that defense counsel's performance was deficient, or that there is a reasonable probability that the outcome of the trial would have been different absent defense counsel's alleged errors.  See *People v Sabin (On Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

(Mich. Ct. App. Op., ECF No. 7-13, PageID.367–368) (footnote omitted).

Petitioner does not respond to the appellate court's determinations.  He does not identify any witness that counsel should have, but did not, call[3] or any defense that counsel should

---

[3] Petitioner claims that counsel should have called the victim to testify.  However, because the victim did not testify, defense counsel was able to argue that the prosecutor failed to carry her burden regarding the fact that the assault was not consented to.  That may have been a weak argument, easily overcome by inference upon viewing the video record of the assault, but it is a stronger argument than presenting the testimony of the victim expressly stating that he did not consent to the assault.  Petitioner offers nothing to suggest that the victim would actually testify that he consented

have, but did not, present.  On the other hand, a review of the pretrial proceedings reveals that Petitioner had a very well-developed sense of how he wanted counsel to proceed—and counsel followed the path that Petitioner laid out regarding the "lawful incarceration" issue.

Based on the court of appeals' unrebutted findings that counsel was prepared to proceed with trial, displayed an astute knowledge of the evidence, and fully cross-examined the prosecution's witnesses, Petitioner's claim that counsel did not sufficiently confer with Petitioner about witnesses and defenses rings hollow.  Petitioner has failed to demonstrate that the court of appeals' conclusions—that counsel was not shown to be deficient nor were any errors shown to be prejudicial—were contrary to, or an unreasonable application of *Strickland*.  Accordingly, he is not entitled to habeas relief on this claim.

### C.    Failure to file a supplemental brief

Petitioner's final ineffective assistance of counsel claim centers on his "lawful incarceration" claim.  Petitioner contended that he could not be found liable of being a prisoner in possession of a weapon if, indeed, his incarceration was not lawful.  Petitioner then argued that his incarceration was not lawful because he was denied counsel at a critical stage of the criminal proceedings—the return of the verdict—that resulted in his incarceration.  Attempting to discern whether or not counsel was present during the return of the verdict in Petitioner's underlying criminal prosecution consumed months of pretrial motions and discovery efforts.  In the end, the prosecution and the defense stipulated that the prosecutor had to prove that Petitioner was lawfully incarcerated and presented the facts regarding counsel's presence at the trial.

---

to the assault.  Absent some evidence that the victim would have so testified, Petitioner cannot prevail on his argument that Petitioner should have called the victim to testify.

During closing arguments, defense counsel requested an opportunity to file a brief on the "lawful incarceration" issue.  The court gave counsel ten days to file such a brief.  The record suggests that counsel never did so.

The court of appeals concluded that the parties' stipulation that the prosecutor was required to show "lawful incarceration" was immaterial:  "Parties may stipulate to matters of fact, but a court is not bound by any such stipulations on questions of law."  (Mich. Ct. App. Op., ECF No. 7-13, PageID.366.)  The court of appeals also declared that the prosecutor was not required to show "lawful incarceration."  Instead, "the prosecution need only prove that at the time of the offense, the defendant was a 'prisoner,' meaning 'a person committed to the jurisdiction of the department who has not been released on parole or discharged,' MCL 800.281a(g)."  (*Id.*)  Because the prosecutor was not required to show "lawful incarceration," the court of appeals concluded that counsel's filing of the brief would have been futile—"counsel is not ineffective for declining to advocate a meritless position."  (*Id.*)

 "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Here, the Michigan Court of Appeals considered and rejected Petitioner's state law position regarding "lawful incarceration" as an element of a prisoner in possession charge.  It is

not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at, 76; *Estelle*, 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).

The court of appeals' further determination that counsel's failure to file the "lawful incarceration" brief was not ineffective assistance is properly before the Court on habeas review. But the appellate court's conclusion is entirely consistent with *Strickland*—"[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial," *Coley*, 706 F.3d at 752—and, thus, habeas relief is not warranted.

## V.  Sufficiency of the evidence (habeas grounds III and IV)

Petitioner raises two challenges to the sufficiency of the evidence. First, as noted above, Petitioner argues that the prosecutor failed to present sufficient evidence that Petitioner was lawfully incarcerated to support a finding of guilt beyond a reasonable doubt with regard to the prisoner in possession charge. And second, Petitioner argues that the prosecutor failed to present sufficient evidence that the victim did not consent to the stabbing to support a finding of guilt beyond a reasonable doubt on the felonious assault charge.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims:  the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The

*Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts. *See Johnson*, 559 U.S. at 138 ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the

substantive elements of the criminal offense as defined by state law.")  Although the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense, *California v. Trombetta*, 467 U.S. 479, 485 (1984), it is also the prerogative of the state to define whether or not a defense applies to a particular crime.  *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .").

### A.    Sufficiency of the "lawful incarceration" evidence

As noted above, under Michigan law, the prosecutor was not required to prove that Petitioner was "lawfully incarcerated."  It is not an element of the prisoner in possession offense. The court of appeals explained:

> [T]here is no dispute that at the time of the commission of the offense, defendant was committed to the Alger Correctional Facility, and had not been released on parole or discharged.  He was therefore subject to prosecution for being a prisoner in possession of a weapon, notwithstanding any real or imagined legal defects attendant to that incarceration.

(Mich. Ct. App. Op., ECF No. 7-13, PageID.366.)  It is the state's prerogative to define the elements of the crime of prisoner in possession of a weapon.  Because those elements do not include "lawful incarceration," Petitioner's claim that the prosecutor did not present sufficient evidence of "lawful incarceration" does not raise a constitutional claim.

### B.    Sufficiency of the "unconsented contact" evidence

Petitioner's challenge regarding the sufficiency of the evidence for his felonious assault conviction fares no better; but it fails for a different reason.  Petitioner argues that "[a] mutual physical confrontation would not constitute touching against a person's will" and, thus,

would not be an assault.  (Pet'r's Br., ECF No. 1-1, PageID.51.)  Petitioner then suggests that the

evidence offered by the prosecutor did not rule out the possibility that his encounter with the victim

was a mutual physical confrontation.

The Michigan Court of Appeals rejected that argument:

The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with intent to injure or place the victim in reasonable apprehension of an immediate battery."  *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).  In this case, Officer Maxon testified that he observed defendant repeatedly stab the victim with the improvised knife.  Other correctional officers responding to the scene described defendant as the "clear aggressor."  The victim sustained five superficial puncture marks from which he was bleeding.

Defendant argues that the prosecution failed to prove beyond a reasonable doubt that what occurred between himself and the victim was not a mutual contest, on the grounds that none of the witnesses saw the beginning of the fight or was in a position to hear any exchange that might have occurred between defendant and the victim.  This argument is not persuasive.  Officer Maxon witnessed the beginning of the fight from his secure location, and, although he could not overhear the prisoners' conversations from the wings, he testified that the victim's back was turned to defendant at the time of the stabbing.  There was no evidence of any verbal exchange between the victim and defendant before the incident.  Indeed, the testimony presented negated any inference that what occurred involved any real mutuality of aggression.  The officers' descriptions of defendant as the "clear aggressor," as well as their indications that the victim was acting only defensively, were consistent.  Officer Maxon testified that, upon being stabbed, the victim quickly turned around and began swinging his hands and moving around the wing, and another correctional officer described the victim as "backing up and trying to defend himself" during the stabbing.  The prison counselor also testified that the victim was not fighting back but was trying simply to avoid getting stabbed.  We conclude that this evidence, viewed in the light most favorable to the prosecution, was sufficient to allow a rational trier of fact to find the elements of felonious assault proved beyond a reasonable doubt.

(Mich. Ct. App. Op., ECF No. 7-13, PageID.365.)

Petitioner contends that the court of appeals elevated an assumption to an inference.

(Pet'r's Br., ECF No. 1-1, PageID.51.)  Petitioner is simply wrong.  *Jackson* holds that it is the

factfinder's province to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at

319.  In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in

determining what distinguishes a reasoned inference from 'mere speculation.'" *Id.* at 655.  The Court described a reasonable inference as an inference that a rational factfinder could make from the facts.  Certainly, the inference identified by the court of appeals rationally flows from the underlying facts.  The inference is not compelled by those facts. The inference may not even be more likely than not; it is simply rational.  *Id.* at 656.  To succeed in his challenge, Petitioner must show that the identified inference is irrational.  He has not.  Calling a reasonable inference an assumption does not render it irrational.

The court of appeals laid out facts that supported the inference that Petitioner's assault of the victim was not a mutual contest and that the victim did not somehow consent to the assault.  Petitioner has failed to show that the court of appeals' rejection of his sufficiency claim on those grounds is contrary to, or an unreasonable application of, *Jackson*, 443 U.S. 307, the clearly established federal law regarding sufficiency of the evidence.  Therefore, Petitioner is not entitled to habeas relief on the claim.

## VI.    Adequate findings of fact and conclusions of law (habeas ground V)

Finally, Petitioner complains that the trial court, when announcing its decision, did not review the applicable statutes, jury instructions, elements of the offenses or burden of proof, nor did the court state detailed factual findings or legal conclusions.  Petitioner notes that a statement of such findings and conclusions is required by the Michigan Court Rules.  Likewise, the Federal Rules of Civil Procedure require a federal district court, following a bench trial, to "find the facts specially and state separately its conclusion of law thereon . . . ." *Sumner*, 449 U.S. at 549.  The Michigan Court of Appeals concluded that the trial court's statement of his findings and conclusions sufficed under state law.

The fact that the rules may require such findings does not transform them into a constitutional mandate.  The Sixth Circuit rejected that claim in *Wofford v. Straub*, 27 F. App'x 517 (6th Cir. 2001):

> Wofford argues that the trial court's failure to articulate findings of fact on the record for each element of his crime violated his due process rights; however, this argument is without merit.  Under state law, malice is a required element of Wofford's conviction for first degree felony murder.  *People v. Watkins*, 247 Mich.App. 14, 634 N.W.2d 370 (2001).  At the conclusion of Wofford's bench trial, it is undisputed that the trial court did not make a specific finding concerning Wofford's malice in committing the crime.  While the Due Process Clause requires that a defendant must be convicted of every element necessary to constitute the crime beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358, 364 (1970), Wofford has not cited to any Supreme Court decision establishing that a trial court, sitting as the finder of fact, must make specific findings for each element of his crime to satisfy constitutional concerns.

*Wofford*, 27 F. App'x at 520.[4]  Accordingly, even if the trial court had failed to comply with the Michigan Court Rules—and the court of appeals has made a binding determination that he did not—it would not raise a cognizable claim for habeas review.  Therefore, Petitioner is not entitled to habeas relief.

---

[4] *See also Arizona v. Washington*, 434 U.S. 497, 517 (1978), where the Supreme Court reversed the court of appeals' grant of the writ.  The Court stated:

> One final matter requires consideration.  The absence of an explicit finding of "manifest necessity" appears to have been determinative for the District Court and may have been so for the Court of Appeals.  If those courts regarded that omission as critical, they required too much.  Since the record provides sufficient justification for the state-court ruling, the failure to explain that ruling more completely does not render it constitutionally defective.

> Review of any trial court decision, is of course, facilitated by findings and by an explanation of the reasons supporting the decision.  No matter how desirable such procedural assistance may be, it is not constitutionally mandated in a case such as this.  *Cf. Cupp v. Naughten*, 414 U.S. 141, 146.  The basis for the trial judge's mistrial order is adequately disclosed by the record, which includes the extensive argument of counsel prior to the judge's ruling.  The state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed to find "manifest necessity" in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion.

*Id.* at 516–17 (footnotes omitted).

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

24

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:    <u>January 22, 2021</u>            <u>/s/ Ray Kent</u>
                                                Ray Kent
                                                United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).